## SOUTHWESTERN SETTLEMENT & DEVELOPMENT CO. et al. v. MAY et al. (No. 558.)

(Court of Civil Appeals of Texas. Beaumont. March 8, 1920. Rehearing Denied March 24, 1920.)

1. **Judgment ⬳744—Judgment in suit to restrain cutting of timber conclusive in suit by plaintiff's successors.**

Judgment on special finding by jury, in suit to enjoin cutting of timber brought by the successor of the grantee of timber on certain land against the successors of the grantor and original owner, *held* conclusive, in suit by buyers from the successor of the grantee against the successors of the grantor, that short-leaf pine timber was merchantable at the date of the original timber deed from the owner of the land.

2. **Trial ⬳365(1)—Verdict and finding construed in view of pleadings and issue.**

In a suit by the successor of the grantee of timber on certain land against the successors of the grantor, the original owner of the timber, to restrain cutting, verdict of the jury, including a special finding that short-leaf pine timber was merchantable at the date of timber deed, *held*, in view of pleadings and issue, not to have given buyers from the successor of the grantee all of the short-leaf pine timber regardless of size.

3. **Trial ⬳365(1)—Finding construed with issues.**

A finding must be construed in connection with the issues made by the pleadings and testimony.

**4. Trial ⬤⟿347—Special verdict held not improper as including general and special verdict.**

In a suit by the successor of the grantee of timber against the successors of the grantor, the original owner of the timber, to restrain cutting, in view of the pleadings and verdict, special verdict on the issue whether short-leaf pine timber was merchantable at the date of the timber deed, *held* not improper, on ground jury cannot return a general and special verdict.

**5. Judgment ⬤⟿725(6) — Special finding held included in judgment and conclusive between parties.**

In a suit by the successor of the grantee of timber on certain land against the successors of the grantor, the original owner of the timber, to restrain cutting, judgment for defendants *held* to have necessarily included a special finding that short-leaf pine timber was merchantable at the date of the timber deed to render such finding conclusive on subsequent trial between the same parties.

**6. Logs and logging ⬤⟿3(15)—Testimony as to what size of timber was merchantable admissible in suit to restrain cutting.**

In suit to restrain cutting of timber, testimony of certain witnesses as to what size of long-leaf timber was merchantable at the date of the deed, an issue not determined by prior litigation, *held* admissible.

**7. Logs and logging ⬤⟿3(15)—What timber merchantable at date of deed held for jury.**

In suit to restrain cutting of timber, the court properly submitted to jury what size timber was merchantable on the date of the timber deed, which conveyed only merchantable timber to be cut within a reasonable time, the question being for the jury to determine as to what size timber was in the minds of the parties when the word "merchantable" was used.

**8. Logs and logging ⬤⟿3(10) — Meaning of "merchantable pine timber" as used in deed.**

The term "merchantable pine timber," as used in a timber deed, meant such pine timber as was suitable for trade and sale, and which had a value on the market at the date of the deed, only such size timber as was ordinarily used for sawmill purposes in the vicinity.

Appeal from District Court, Jasper County; John Hancock, Special Judge.

Suit by the Southwestern Settlement & Development Company and others against G. F. May and others. From the judgment, plaintiffs appeal. Affirmed in part; in part reversed and remanded.

Kennerly, Williams, Lee & Hill, of Houston, for appellants.

Smith & Lanier, of Jasper, for appellees.

WALKER, J. On the 12th day of June, A. D. 1900, W. C. Parsons conveyed to the Reliance Lumber Company "all the merchantable pine timber now standing and growing upon" 395 acres of land in Jasper county, Tex., situated on the east bank of the Neches river. Prior to 1900, the Houston Oil Company acquired the rights of the Reliance Lumber Company in this timber, and Allen Hamilton and others acquired the rights of W. C. Parsons in the land and such rights as he had in the timber. In 1900 Hamilton and those associated with him in the ownership of the land began cutting the timber described in the above-mentioned deed, and the Houston Oil Company instituted suit to enjoin such cutting of the timber styled Houston Oil Co. v. Allen Hamilton et al., No. 1428. On the trial of that cause the defendants contended that the plaintiff, under the timber deed from Parsons, had only a reasonable length of time in which to cut and remove the merchantable pine timber from the land; that they had already had such reasonable time, and that the title to the timber had reverted to them (the defendants) as the owners of the W. C. Parson interest. The plaintiff claimed that the instrument conveyed to it a fee-simple title to the timber. Also the defendants pleaded specially that at the time of the execution of the timber deed in 1900 the short-leaf pine timber was not "merchantable." This was controverted by plaintiff. The case was tried by a jury, and was submitted on a general charge and the following special charge:

"The evidence discloses the fact that there is standing and growing on the land described in plaintiff's petition, and was so standing and growing thereon on the 12th day of June, 1900, both long-leaf and short-leaf pine, and you are instructed to find from the evidence in the case whether or not at the time of the sale of said timber by W. C. Parsons to Reliance Lumber Company, short-leaf pine was then merchantable."

Under the charge the jury returned the following verdict:

"We, the jury, find that plaintiff has had a reasonable time in which to remove the merchantable pine timber, and find a verdict in favor of the defendants. We also find that short-leaf pine was merchantable pine timber at the time of the sale of said timber by W. C. Parsons to Reliance Lumber Company."

On this verdict the court entered the following judgment:

" * * * It is therefore considered by the court that the Houston Oil Company of Texas take nothing by its said suit, and that Allen Hamilton and wife, Pearl Hamilton, and George May and wife, Callie May, go hence without day, and recover of said plaintiff all their costs in this behalf expended."

This judgment sets out in full the verdict of the jury. The Court of Civil Appeals for the First Supreme Judicial District affirmed this judgment. 153 S. W. 1194. The Su-

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

preme Court (206 S. W. 817) reviewed the judgment of the Court of Civil Appeals, and reversed the judgment of the district court and Court of Civil Appeals, and rendered judgment for the Houston Oil Company as follows:

" * * * This cause came on to be heard on writ of error to the Court of Civil Appeals for the First Supreme Judicial District, and the original transcript of said cause being before the court, as well as the transcript showing the proceedings had in said Court of Civil Appeals, and these having been duly considered, because it is the opinion of this court there was error in the judgment of the Court of Civil Appeals and district court, it is therefore considered, adjudged, and ordered that said judgment be reversed; and, this court proceeding to render such judgment as should have been rendered, it is ordered, adjudged, and decreed that the defendants in error, Allen Hamilton and wife, Pearl Hamilton, and George May and wife, Callie May, be and they are hereby perpetually enjoined and restrained from removing and selling the merchantable pine timber standing and growing on June 12, 1900, on the following described tract of land [here follows description of 395 acres]; that the plaintiff in error Houston Oil Company of Texas go hence without day, and do have and recover of and from the defendants in error, Allen Hamilton and wife, Pearl Hamilton, and George May and wife, Callie May, all costs in this behalf expended in this court, the Court of Civil Appeals, and the district court, and this decision be certified to the district court for observance," etc.

In 1919, the defendants in the above-described cause again began cutting the timber on the 395 acres of land, and on petition of appellants here (vendees of Houston Oil Company) on the 7th day of May, 1919, were again enjoined from cutting the timber. On this last trial, the case was submitted to the jury on special issues, as follows:

Question No. 1: "What was the diameter in inches at the stump of the smallest long-leaf yellow pine in controversy which was merchantable on June 12, 1900?"

To which the jury answered, "Twenty inches."

Question No. 2: "Was the 'black sap' or 'loblolly' or 'bastard' pine in controversy merchantable on June 12, 1900?"

To which the jury answered, "No."

Question No. 3 was not answered by the jury.

Question No. 4: "Was 'rosemary' pine timber merchantable pine timber on June 12, 1911?"

To which the jury answered, "No."

Question No. 5 was not answered by the jury.

Question No. 6: "What has been the average growth in inches in diameter of long-leaf yellow pine timber involved in this suit?"

To which the jury answered, "Five inches."

Question No. 7: "What has been the average growth in inches in diameter of the 'black sap' or 'loblolly' or 'bastard' timber involved in this suit?"

To which the jury answered; "Eight inches."

Question No. 8: "What has been the average growth in inches in diameter of 'rosemary' timber involved in this suit?"

To which the jury answered, "Eight inches."

Question No. 9: "Does the term 'short-leaf timber' include loblolly, black sap, or bastard pine timber?"

To which the jury answered, "Yes."

On this verdict judgment was rendered that the plaintiffs recover from the defendants all long-leaf pine timber 25 inches in diameter and above, standing and growing on the land at the time of the trial, and decreeing to the defendants "all timber of whatsoever character or class, except the long-leaf yellow pine timber measuring 25 or more inches in diameter at the stump situated on the lands hereinafter described" (referring to the 395 acres conveyed by Parsons to the Reliance Lumber Company). To this judgment the plaintiffs excepted, filed a motion for new trial, and have brought the case here for review.

The first proposition is that the court erred in submitting to the jury the issue of whether or not short-leaf pine timber was merchantable in 1900, because the verdict of the jury in the old case of Houston Oil Company v. Allen Hamilton et al. was conclusive between these parties, "so that the court erred both in submitting any issue to the jury in the instant case, requiring them to find whether or not short-leaf was merchantable on said date, and in rendering judgment against appellants for said short-leaf pine."

[1] In our judgment, the special finding by the jury in the old case of Houston Oil Company v. Allen Hamilton was conclusive against appellees that short-leaf pine timber was merchantable in 1900, the date of the deed from Parsons to the Reliance Lumber Company. This finding was not reversed by the Supreme Court, but was directly affirmed, as is manifest from an inspection of the judgment above given. The Supreme Court enjoined these appellees "from cutting, removing or selling the merchantable pine timber." Construing this judgment in the light of the issues as made and the findings of the jury, it could only mean that appellees were enjoined from cutting and removing such long and short leaf pine timber as was merchantable in 1900.

[2] However, appellants are not correct in their further proposition that the verdict of the jury in the old case gave them all of the short-leaf pine timber, regardless of size. The issue submitted and answered by the jury should not be given this construction. Under the pleadings of the old case, Allen Hamilton and his associates conceded that as a class long-leaf pine timber was merchantable, but denied that any short-leaf pine timber was merchantable. The issue was thus sharply drawn by both parties as to whether or not "short-leaf timber," as a class, was merchantable at the date of the deed from Parsons to the Reliance Lumber

Company. This was the issue submitted to the jury, and their answer must be construed in the light of the issue thus presented. Hence we conclude that by the verdict of the jury in the old case, both short-leaf and long-leaf pine timber were included in the Parsons conveyance.

Against this construction of the old verdict, appellees advance a number of counter propositions:

[3] (1) That this suit does not involve the same subject-matter as the first suit. The argument advanced by appellees is that a finding that short-leaf pine timber was merchantable in 1900 is not a finding that the short-leaf pine timber on the 395 acres in controversy was merchantable. This is not sound. This finding must be construed in connection with the issues made by the pleadings and testimony. The issue thus made and thus determined was that short-leaf pine timber on the 395 acres of the Parsons land was merchantable.

[4] (2) That a jury cannot return a general and special verdict. The court's main charge in the old trial is not in this record, but from the pleadings and the verdict it is apparent that a special verdict on the issues involved, conceding that the charge would require a general verdict, was not improper. If the jury had found that a reasonable time had not elapsed, and had found for the plaintiff, then it was a material issue, raised both by the pleadings and by the testimony, as to whether or not short-leaf pine timber was included in the conveyance. A charge requiring such a finding is not subject to criticism.

[5] (3) "For the special finding of a jury on a former trial to be conclusive of matters therein found between the same parties in a subsequent trial, it must appear that in such former trial a judgment was rendered on such special finding." Conceding that this states a correct legal proposition, as we construe the judgment of the Supreme Court this special finding by the jury is necessarily included in a correct construction of the same.

What we have just said disposes of the fourth and fifth counter propositions. The Supreme Court reversed only that part of the judgment construing the Parsons deed as to the time within which the grantee had to remove the timber. This special finding of the jury was not affected by this reversal, because it is necessarily included in the judgment of the Supreme Court.

[6] No error was committed by the court in permitting the defendants' witnesses, Ellis, Ferguson, and Grimes, to testify as to what size of the long-leaf pine timber was merchantable pine timber in June, 1900. The issue as to whether or not short-leaf pine timber was merchantable was res adjudicata, and the objection to the question propounded to these witnesses as to whether or not "loblolly" or "bastard" pine as a class was merchantable should have been sustained.

[7] The court did not err in submitting to the jury the issue as to what size timber was merchantable on June 12, 1900. The Parsons deed conveyed only merchantable timber. Manifestly, all sizes of timber on the land were not merchantable. Some of it must have been too small for any merchantable use. Then the question was one for the jury to determine as to what size timber was in the minds of the parties when the word "merchantable" was used in the conveyance.

[8] In his charge to the jury, the court thus defined merchantable pine timber:

"You are charged that by the term 'merchantable pine timber' as used in this charge is meant such pine timber as was suitable for trade or sale, and which had a value on the market on June 12, 1900."

This charge was duly excepted to by appellants, and in lieu thereof they asked the court to charge the jury as follows:

"You are instructed that at the date of the deed, June 12, 1900, any and all pine timber that on the market had a value was merchantable pine timber."

We believe the court's charge is correct. The term "merchantable," as used in the deed from Parsons to Reliance Lumber Company, meant only such size pine timber as was ordinarily used for sawmill purposes from that vicinity. Tenny v. Mulvaney, 9 Or. 405; Kaul v. Weed, 203 Pa. 586, 53 Atl. 489.

In the Tenny Case, supra, the court used the following language: In construing the term "merchantable," as used in the contract to deliver good, sound, and merchantable logs, the court observes that "a log might be 'good, sound and merchantable' for many purposes, and yet not fit for being manufactured into lumber, and the same log might, owing to a difference in the settled usages of the business in two different localities, be deemed a 'merchantable' log in one, and not in the other. 'Merchantable' logs, then, in reference to the business of manufacturing lumber in any particular locality, are such logs as are ordinarily used for that purpose at that particular place."

We affirm that part of the judgment of the trial court disposing of the long-leaf pine timber. That part of the judgment disposing of the short-leaf pine timber is reversed, and as to that this cause is reversed and remanded for a new trial, in accordance with the views expressed by us in this opinion.

Affirmed in part, and in part reversed and remanded.